## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE** (this "Agreement") is made by and among Sabine Storage & Operations, Inc., on behalf of itself and as debtor-in-possession of its chapter 11 bankruptcy estate ("SSO" or the "Debtor"), and The Dow Chemical Company ("Dow" and collectively with the "Debtor," the "Parties"), subject to the approval by the Bankruptcy Court (defined below).

## RECITALS

**WHEREAS**, on December 29, 2017, SSO filed suit in Texas state court in the case styled *Sabine Storage & Operations, Inc. v. The Dow Chemical Co.*, Case No. B-201118 (60th Judicial Court of Jefferson County, Texas) (the "State Court Litigation"), seeking approximately $3.5 million from Dow (the "SSO Claim") pursuant to a contract between SSO and Dow to design and install a Class 1 Hazardous Waste disposal well ("WDW-391") at Dow's plant in Beaumont, Texas.

**WHEREAS**, on July 19, 2018, Dow asserted a counterclaim against SSO in the State Court Litigation, seeking to recover approximately $4.5 million in costs related to the remediation of WDW-391 (the "Dow State Court Counterclaim").

**WHEREAS**, on or about August 2020, Dow and SSO entered into certain contracts related to engineering, well site supervision, and construction management of GBO Well 13 ("GBO13"), an out-of-service brine well associated with Dow's salt mining operations in Grand Bayou, Louisiana. Dow alleges that it was required to spend approximately $4.8 million addressing problems that arose during SSO's work on GBO13. Dow further alleges that it paid an additional $750,000 to the Debtor intended to cover amounts owed to a subcontractor, Premium Oilfield Services LLC ("Premium"), which Premium never received. The aforementioned payments comprise Dow's claims related to GBO13 (collectively, the "Dow GBO13 Claim").

**WHEREAS**, in 2020, Dow and SSO entered into certain contracts requiring SSO to provide engineering, well site supervision, and construction management of the SW-15 well ("SW15"), including the installation of a new liner. Dow asserts that certain additional work that it performed related to SW15 cost Dow over $1.1 million (the "Dow SW15 Claim," and together with the GBO13 Claim and the Dow State Court Counterclaim, the "Dow Claims").

**WHEREAS**, on March 16, 2022 (the "Petition Date"), SSO filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

**WHEREAS**, on April 20, 2022, Dow filed its *Motion for Relief from the Automatic Stay to (I) Continue Pending State Court Litigation; (II) Assert Additional Claims in an Adversary Proceeding; and (III) Effectuate Setoff* [Docket No. 38] (the "Lift Stay Motion").

**WHEREAS**, on April 20, 2022, Dow filed, in the alternative to its Lift Stay Motion, the *Motion to Dismiss the Debtor's Bankruptcy Case* [Docket No. 39] (the "Motion to Dismiss," and together with the Lift Stay Motion, the "Motions").

1

13429615

**WHEREAS**, following the filing of the Motions, Dow served on SSO certain notices of deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 2004 of the Federal Rules of Bankruptcy Procedure, and related document requests (collectively, the "Pending Discovery Requests").

**WHEREAS**, the Parties have reached an agreement to resolve all claims and disputes between them on the terms set forth below.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing and of the mutual execution of this Agreement and the releases and covenants set forth herein, the Parties agree as follows. The above Recitals are incorporated herein as if restated in their entirety.

1. **EFFECTIVE DATE.** Following execution of this Agreement by the Parties, the Debtor shall promptly, and in all events within three (3) business days, file a motion reasonably acceptable to Dow and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of this Agreement. This Agreement shall become effective and binding on each of the Parties (the "Effective Date") at such time that (a) both of the Parties have executed this Agreement and (b) the Bankruptcy Court has entered an order approving this Agreement, which order has not been stayed and remains in full force and effect (the "Final Order"). For the avoidance of doubt, occurrence of the Effective Date will not be conditioned on the confirmation of any bankruptcy plan.

2. **MUTUAL RELEASES.**

   **2.1. Releases.** Upon the Effective Date of this Agreement, the Parties, for themselves and for any or all of their respective agents, parents, subsidiaries, affiliates, representatives, successors, heirs, administrators, guarantors, executors, assigns, attorneys, and any other person or entity claiming through or under them, hereby fully and finally release, acquit, discharge, and forever hold the other harmless from any and all claims, counterclaims, demands or suits, known or unknown, fixed or contingent, liquidated or unliquidated, including but not limited to the Dow Claims and the SSO Claim. This release is made regardless of whether any such claim, counterclaim, demand or suit released seeks or sought damages, specific performance, or declaratory or injunctive relief, regardless of whether any such claims, counterclaims, demands or suits released are based in negligence, gross negligence, negligent misrepresentation, breach of contract, fraud or fraud in the inducement, or breach of any other duty. This Agreement is to be construed as the broadest type of general release.

   **2.2. Exceptions.** Notwithstanding the releases set forth herein, the Parties do not release each other for any claims related to this Agreement or breach of this Agreement.

   **2.3. Bankruptcy Plan Releases.** In addition to the releases provided for in Section 2.1., the Debtor will include Dow, in a provision reasonably acceptable to Dow, as a party being released by the Debtor, the Debtor's bankruptcy estate, the reorganized Debtor and any current or former directors, officers, or insiders giving releases (a "Released Party") in

2

connection with any bankruptcy plan of reorganization or liquidation proposed by the Debtor. However, provided that the Debtor has complied with the requirements of the preceding sentence, confirmation of a plan that does not include Dow as a "Released Party," as described above, shall not constitute a breach of this Agreement by the Debtor.

3. **WITHDRAWAL OF MOTIONS AND DISCOVERY.** Upon the Effective Date, the Dow Pending Discovery Requests will be deemed withdrawn.

4. **WARRANTIES AND COVENANTS.**

   **4.1. Warranties and Covenants by Dow.** Dow warrants and covenants that (a) it has the legal capacity and authority to enter into this Agreement and to effect the full and final resolution of all claims and defenses by or against Dow; (b) the individual executing this Agreement on Dow's behalf has the legal capacity and authority to do so and to effect the full and final settlement of each of Dow's claims and defenses in connection with or related to the Dow Claims and the SSO Claim; (c) this Agreement shall be binding and enforceable in accordance with all of the terms set forth herein on the Effective Date of this Agreement; and (d) this Agreement is executed in good faith.

   **4.2. Warranties and Covenants by SSO.** SSO covenants that (a) it has the legal capacity and authority to enter into this Agreement and to effect the full and final resolution of all disputes, claims and defenses by or against SSO; (b) the individual executing this Agreement on SSO's behalf has the legal capacity and authority to do so and to effect the full and final settlement of each of SSO's claims and defenses in connection with or related to the Dow Claims and the SSO Claim; and (c) the Agreement shall be binding and enforceable in accordance with the terms set forth herein on the Effective Date of this Agreement; and (d) this Agreement is executed in good faith.

5. **PURPOSE OF AGREEMENT; NO ADMISSIONS AND NO PRECEDENTIAL VALUE.**

   **5.1. No Admission of Liability.** It is understood and agreed by the Parties that this Agreement represents a settlement and compromise with respect to the Dow Claims and the SSO Claim, and neither this Agreement itself, nor any of the covenants described herein, nor anything else connected with this Agreement, is to be construed as an admission of fault or liability related to or concerning any matter in dispute between the Parties.

   **5.2. No Precedential Value.** The execution and implementation of this Agreement shall be of no precedential value and may not be cited, urged or promoted by any of the Parties to support any particular position by any of the Parties. Neither of the Parties shall be deemed to have approved, accepted, or consented to any concept, method, theory, principle, claim or jurisdiction, factual interpretation, statutory interpretation, regulatory or contractual interpretation underlying any of the matters resolved, settled or concluded by this Agreement.

6. **SUCCESSORS AND ASSIGNS.** The provisions of this Agreement shall be binding on the Parties and their successors, heirs, respective predecessors, successors and assigns as well as the past, present, and future agents, servants, employees, officers, directors and

managers, and shall inure to the benefit of the Parties and their successors, heirs, and assigns.

7. **FULL AGREEMENT AND SEVERABILITY.**

   **7.1. Entire Agreement.** This Agreement sets forth the full terms of the compromise and settlement with respect to the Dow Claims and the SSO Claim. This Agreement supersedes all prior and contemporaneous oral and written agreements, understandings, negotiations, and discussions among the parties hereto relating to the subject matters hereof. This Agreement constitutes the entire Agreement between the Parties and the terms and conditions of this Agreement are contractual and not mere recitals. This Agreement may not be modified, altered, or amended in whole or in part except by a written instrument executed by each and every Party.

   **7.2. Severability.** If any section of this Agreement (or portion thereof) is found to be invalid for any reason, such section (or portion thereof) shall be severed from the Agreement and the remainder of the terms and conditions of this Agreement shall continue to be binding upon the Parties.

8. **CONSTRUCTION.** This Agreement has been drafted through a cooperative effort of all Parties, and no Party(ies) shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon any of the other Parties. The execution and delivery of this Agreement is the free and voluntary act of the Parties. All Parties represent and warrant that they have had the benefit of legal counsel of their own choosing in connection with the negotiation, preparation, and execution of this Agreement.

9. **HEADINGS.** The headings of sections or paragraphs of this Agreement are merely for convenience of reference and have no substantive significance and shall be disregarded in the interpretation of this Agreement.

10. **JURISDICTION.** The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to this Agreement and enforcement of all rights hereunder.

11. **APPLICABLE LAW.** This Agreement shall be governed and enforced in accordance with the laws of the Bankruptcy Code and, failing their applicability, the laws of the State of Texas, without regard to its conflict of laws principles.

12. **NO RELIANCE.** Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Settlement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13. **EXECUTION IN COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall

constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. **COOPERATION.** All Parties agree to cooperate fully and to execute any and all supplementary documents and take all actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

*[Signature pages follow]*

Thus done and signed, in duplicate counterpart originals, on the 26th day of May 2022, by Timothy Bauer, a duly authorized officer of SSO, in the presence of two witnesses who hereunto fix their signature.

WITNESSES:

Printed Name: Elaine C. Senters

Printed Name: Sharon K. Wood

**Sabine Storage & Operations, Inc.**

By: _____
Printed Name: Timothy Bauer
Printed Title: Vice President and Authorized Rep.

Thus done and signed, in duplicate counterpart originals, on the 31st day of May 2022, by Amy E. Worden, a duly authorized officer of Dow, in the presence of two witnesses who hereunto fix their signature.

WITNESSES:

_____
Printed Name: Abigail Walk

_____
Printed Name: Katie Wolinski

**The Dow Chemical Company**

By: _____
Printed Name: [●] Amy E. Worden
Printed Title: [●] Expert Counsel

13429615