FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
12/29/2017 11:30 AM
JAMIE SMITH
DISTRICT CLERK
B-201118

NO. _____

| | | |
|---|---|---|
| SABINE STORAGE & OPERATIONS, INC. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| THE DOW CHEMICAL COMPANY | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Sabine Storage & Operations, Inc. ("**SSO**"), files this Original Petition against Defendant The Dow Chemical Company ("**Dow**") and in support thereof respectfully shows the Court as follows:

### Discovery Level

1. Pursuant to Rules 190.1 and 190.3 of the Texas Rules of Civil Procedure, this case presents a Level 2 discovery plan as that term is used under the Texas Rules of Civil Procedure, as SSO seeks monetary relief of over $1,000,000.00, in accordance with Texas Rule of Civil Procedure 47(c)(5).

### Statement of the Cause of Action

2. SSO brings this cause of action for breach of contract, promissory estoppel, quantum meruit, unjust enrichment, fraud and/or fraudulent inducement, tortious interference with contractual relations, violations of the Texas Prompt Pay Act, and constructive trust, and seeks judgment against Dow for all of its recoverable damages and remedies, some of which are pleaded in the alternative, including but not limited to, its actual, economic, expectation, reliance, liquidated, out-of-pocket, benefit-of-the-bargain, loss of the benefit, lost profit, and statutory damages, restitution, a constructive trust, exemplary damages, plus both pre-judgment and post-judgment interest, attorneys' fees, and costs, and all such other and further relief to which SSO deems itself justly entitled.

1

## Parties

3. Plaintiff Sabine Storage & Operations, Inc. is a Texas corporation located at 5718 Westheimer, Suite 1251, Houston, Texas 77057.

4. Defendant The Dow Chemical Company is a Delaware corporation with a registered address of 2030 Dow Center, Midland, Michigan 48674, doing business at 5470 North Twin City Highway, Nederland, Texas 77627, and may be served with this Petition together with Citation through its registered agent CT Corp System, 1999 Bryan St., Suite 900, Dallas, Texas 75201, or wherever it may be found.

## Jurisdiction and Venue

5. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

6. Venue is proper in this Court pursuant to Texas Civil Practice & Remedies Code §15.002(a)(1) because Jefferson County is the county in which all or a substantial part of the events or omissions giving rise to SSO's claims accrued, and pursuant to Texas Civil Practice & Remedies Code §15.035(a) because the purchase order between the parties names Nederland, Texas as the location where SSO was engaged to provide services to Dow.

## Facts

7. SSO is a Houston-based engineering company providing a variety of services relating to drilling, storage, construction, and safety, focusing on the development, maintenance, and operation of underground storage facilities for liquids and gases, and disposal of waste. SSO and Dow have worked together on several projects in Texas and the surrounding region over the course of over ten (10) years.

8. Pursuant to Purchase Order number 4504902220, Dow engaged SSO for work at WDW#391 Construction (the "**Purchase Order**"). Specifically, SSO agreed "to provide

2

materials, labor, sub-contractor management and professional services required for the design and installation of injection well WDW#391," as outlined in SSO's October 11, 2016 proposal for such work ("**Proposal**"). SSO was one of several bidders for the work described in the Purchase Order. The Proposal contained a list of labor and expenses for drilling and completion of injection well WDW#391, and estimates for each third party service and vendor, materials, and fees. The total baseline cost proposed was $3,583,160.00, and the total cost proposed with contingency was $4,047,349.00. SSO believed in good faith that the descriptions and estimates in the Proposal would cover the cost of designing and installing injection well WCW391, with a cushion for any unexpected costs.

9. Pursuant to the Purchase Order, Dow agreed to pay SSO pursuant to its standard terms and conditions and, "on a cost reimbursable basis with timesheets and materials receivers [sic] submitted to Dow's [sic] project manager on a weekly basis for review and approval." SSO agreed to submit NOCs/PCNs with estimated cost impact to Dow a project manager or construction manager for approval. The payment terms of the Purchase Order were "NET 60," meaning Dow was to pay SSO in full within 60 days after each service was completed and invoiced. The initial delivery date for the completed work under the Purchase Order was March 31, 2017.

10. Dow agreed to pay SSO $3,583,160.00 for the services outlined in the Proposal, pursuant to the Purchase Order. Subsequent to the Proposal, SSO and Dow agreed that $4,151,161.00 was authorized for the expenditure in the Purchase Order, raising the contingency to $568,001.00. The parties also agreed on change orders for a total of $1,597,741.00.

11. Due to circumstances outside the control of SSO, the work set forth in the Proposal did not actually begin until March 28, 2017, and the delivery date was ultimately extended to September 30, 2017.

12. SSO complied with all of its obligations under the Purchase Order, including timely performing its work and supervisory responsibilities under the circumstances, timely submitting its invoices, providing weekly updates regarding price and project changes, and obtaining approvals regarding changes to SSO's scope of work.

13. Despite SSO's best efforts, the cost of the work under the Purchase Order increased significantly, due to on-site factors that could not have reasonably been anticipated by SSO, including but not limited to, a delayed start date, multiple weather delays, lack of control over Dow's access road, decrease in rate of penetration, down time in equipment, unanticipated logistical problems on site, safety concerns, and Dow's own requirements and/or delays. Most of these unforeseen circumstances were factors under Dow's control. Regardless of the source, however, all of the additional costs were submitted to Dow's construction managers and/or project managers on a timely basis, and each time Dow verbally accepted or approved the change, and instructed SSO to proceed with the work, with full knowledge of the additional costs, stating to get it done, "safely and quickly" (to paraphrase).

14. Ultimately these unforeseen circumstances were a large part of the increased cost of the work pursuant to the Purchase Order. For example, the daily operating cost of the project was approximately $72,000.00. Because the duration of the project doubled (52 days to 109 days), as did the number of days SSO required use of a drilling rig (45 days to 90 days), an additional $3,780,763.38 in expenditures was incurred. There were also three costly operations, the scope of

which could not have been anticipated at the time of SSO's Proposal: logging, fishing, and gravel pack (totaling approximately $235,000.00).

15. At this time, the total cost under the Purchase Order upon completion of the project is an amount no less than $9,460,743.13, which is reflected in invoices SSO submitted to Dow. Despite having approved the entire scope of work performed, and accepting such work, Dow has not paid multiple invoices submitted by SSO pursuant to the Purchase Order, resulting in an outstanding balance of no less than $3,482,927.15. Again, all changes in scope and cost of the project pursuant to the Purchase Order were communicated by SSO to Dow on a daily basis; Dow did not reject or disapprove of any additional task or expenditure which was undertaken by SSO and reflected in the invoices. All work conducted pursuant to SSO's invoices was submitted to Dow and implicitly or explicitly approved by Dow at the time of such work. If Dow wanted a different deal, such as a "fixed cost" contract, it should have negotiated and made that deal with SSO, on the front end of the transaction, rather than withholding payment to strong-arm a better deal after SSO's services were performed, and accepted by Dow.

16. Because Dow has not paid SSO in full for the costs incurred pursuant to the Purchase Order, SSO has been unable to pay many of the invoices submitted by its subcontractors for their work at and/or materials supplied to WDW#391 pursuant to the Purchase Order. As a result, Dow and SSO are no longer eligible for early-pay discounts offered by these subcontractors and some of these subcontractors have charged SSO late fees, increasing the cost of the work under the Purchase Order. Some of the subcontractors/vendors/suppliers are considering filing liens against Dow's property, and others are threatening litigation against SSO, though SSO is doing everything it can to prevent the filing of such liens.

17.     Moreover, despite its refusal to pay SSO the amounts due and owing, Dow has repeatedly made demand for SSO's written logs, reports, test materials and other related documentation. It claims such logs, reports and other documentation are "work for hire" and that they are Dow's intellectual property and proprietary/confidential information, causing SSO's retention of the same to violate Dow's "general terms and conditions." Contrary to Dow's claims, payment is a necessary condition precedent to SSO's performance of any obligation relating to such records.

### Conditions Precedent

18.     All conditions precedent to SSO's rights to bring this lawsuit and recover against Dow have been performed, have occurred, or have been waived.

### Causes of Action

### *Breach of Contract*

19.     SSO incorporates paragraphs 1–18 as if fully set forth herein.

20.     SSO entered into a valid and enforceable contract with Dow on or about October 21, 2016, specifically, the Purchase Order, and as it was modified through written and verbal change orders. Dow was obligated under the Purchase Order, to pay SSO for its services provided pursuant to the Purchase Order, "subject to standard Dow [terms & conditions] on a cost reimbursable basis with timesheets and materials receivers [sic] submitted to Dow project manager on a weekly basis for review and approval."

21.     SSO fully performed all of its obligations under the Purchase Order.

22.     Dow breached its obligations under the Purchase Order, by failing to pay SSO in full for the services performed and invoices submitted pursuant to the Purchase Order. As a result of Dow's failure to pay, SSO incurred damages of no less than $3,482,927.15. SSO seeks all recoverable damages, including but not limited to, its actual, economic, expectation and reliance

6

damages, and costs, and interest thereon.

23.     Pursuant to Texas Civil Practice & Remedies Code §38.001, *et seq.*, SSO is also entitled to attorneys' fees and costs incurred in pursuing its breach of claim against Dow.

### *Promissory Estoppel*

24.     SSO incorporates paragraphs 1–18 as if fully set forth herein.

25.     Additionally and alternatively, Dow made a promise to SSO to compensate SSO for the valuable services, equipment, and materials provided to Dow by SSO, including materials, labor, and subcontractor management for construction at WDW#391. SSO reasonably and substantially relied on such promise, to its detriment, by providing to Dow valuable materials, services, and equipment, including materials, labor, and subcontractor management for construction at WDW#391. SSO's reliance was foreseeable by DOW and injustice can only be avoided by enforcing Dow's promise.

26.     SSO seeks all recoverable damages and remedies from Dow, including but not limited to, reliance damages, attorneys, fees, costs and interest thereon.

### *Quantum Meruit*

27.     SSO incorporates paragraphs 1–18 as if fully set forth herein.

28.     Additionally and alternatively, Dow accepted and benefited from materials, services, and equipment provided to Dow by SSO, including materials, labor, and subcontractor management for construction at WDW#391. Dow knew or should have known that SSO expected compensation when Dow accepted SSO's materials, labor, and subcontractor management. Dow failed to compensate SSO in full, though Dow had reasonable notice that SSO expected compensation in full for the materials, labor, and subcontractor management provided.

29.     Dow's acceptance of SSO's materials, labor, and subcontractor management without payment in full proximately caused SSO to suffer damages of no less than $3,482,927.15,

which it seeks to recover. Despite multiple demands by SSO, Dow has failed and refused, and continues to fail and refuse to remit payment of amounts rightfully due and owing to SSO. SSO seeks all recoverable damages and remedies, including but not limited to, its actual damages, attorneys' fees, costs and interest thereon.

### *Unjust Enrichment*

30. SSO incorporates paragraphs 1–18 as if fully set forth herein.

31. Additionally and alternatively, Dow knowingly benefitted at the expense of SSO. SSO performed services and provided materials to Dow for design and installation of an injection well at WDW#391, and Dow was obligated to pay SSO for such service and materials. However, Dow retained $3,482,927.15 which was due and owing to SSO for its work at WDW#391. Allowing Dow to retain the benefits of its misconduct would be unjust. SSO is entitled to recover its actual damages from the unjust enrichment benefiting Dow, plus restitution, if any, based on such unjust enrichment, including without limitation, actual damages, restitution damages, costs of court, and interest thereon. Such damages include the amounts which Dow owes to SSO and its subcontractors for their services and materials supplied at WDW#391, which Dow retained, which is at least $3,482,927.15.

### *Fraud and/or Fraudulent Inducement*

32. SSO incorporates paragraphs 1–18 as if fully set forth herein.

33. Dow represented to SSO that SSO would be paid on a cost-reimbursable basis, and that SSO would be paid pursuant to the invoices and time sheets submitted to Dow and approved by Dow for services and materials provided by SSO at WDW#391 for design and installation of an injection well. This representation was important to SSO in agreeing to perform services and provide materials at WDW#391 and engaging subcontractors to perform services and provide materials according to certain agreed terms. Dow represented that SSO should perform additional

8

work on a cost reimbursable basis, which SSO would not have performed if it had known that Dow would subsequently refuse to pay the costs incurred. Dow also represented that it would pay SSO on a net-60 basis, and SSO relied on this representation in hiring subcontractors on certain terms.

34. However, Dow has not reimbursed SSO for its costs incurred for services and materials provided to WDW#391, for SSO's subcontractors' services and materials provided to WDW#391, or for costs incurred by SSO pursuant to Dow's representations that such work was approved on a cost reimbursable basis. Nor has Dow paid SSO on a net-60 basis. Dow made these representations with the intent that SSO act on them. SSO did rely on these representations, and entered into the Purchase Order and subcontracts, performed services, and provided materials in reliance on these representations. SSO's reliance on these representations was justifiable.

35. SSO's reliance on Dow's misrepresentations resulted in injury to SSO of the amounts it paid and/or agreed to pay to subcontractors who performed work and/or provided materials at WDW#391, and the costs it incurred in providing services and materials to Dow for which it believed it would be reimbursed and/or paid, totaling $3,482,927.15.

36. SSO seeks all recoverable damages and remedies from Dow, including its direct damages as well as its damages incurred as a proximate result of Dow's misrepresentations. SSO thus seeks its actual damages, out-of-pocket damages, benefit-of-the-bargain damages, exemplary damages, costs of court, and interest thereon.

### *Tortious Interference with Contractual Relations*

37. SSO incorporates paragraphs 1–18 as if fully set forth herein.

38. SSO had valid contracts with several subcontractors, which required SSO to pay these subcontractors in exchange for each subcontractor performing services at or providing materials to WDW#391.

39. Dow knew or had reason to know of SSO's contracts with its subcontractors, as well as SSO's interest in the contracts; the Proposal specifically references "Third Party Services & Vendors" for a variety of tasks. Dow willfully and intentionally interfered with SSO's contracts with its subcontractors by preventing SSO from performing its obligations under its subcontracts and/or by failing to timely pay SSO in full, making SSO's performance of its subcontracts impossible, or at least more burdensome, more difficult, and more expensive.

40. This interference proximately caused injury to SSO, which resulted in damages. SSO has been unable to pay its subcontractors as a result of Dow's interference, incurring damages of at least $1,802,582.00. At a minimum, due to Dow's interference, SSO lost discounts from its subcontractors for prompt payment of their invoices, and/or caused SSO to incur late fees on the amounts due and owing. SSO seeks all recoverable damages and remedies from Dow, including but not limited to, actual damages, damages for any lost benefits of such contracts, damages for economic injury, including lost profits, costs of court and interest thereon.

41. SSO seeks to recover exemplary damages under Texas Civil Practice & Remedies Code §41.003(a), because its injuries are the result of Dow's actual malice or fraud.

### *Violation of the Texas Prompt Pay Act*

42. SSO incorporates paragraphs 1–18 as if fully set forth herein.

43. Additionally and alternatively, Dow was required, pursuant to Texas Property Code §28.001, *et seq*. (the "**Prompt Pay Act**"), to remit payment to SSO for sums due not later than the 35th day after the date Dow received SSO's request for payment.

44. Dow has failed and refused, and continues to fail and refuse, to pay SSO amounts due and owing pursuant to SSO's invoices. Because Dow has yet to comply with the terms of the Prompt Pay Act, SSO is entitled, and seeks, to recover those sums for which SSO invoiced Dow and which Dow has not yet paid (not less than $3,482,927.15), including its actual damages, and

10

statutory damages, plus interest on those amounts at the rate of 1.5% per month, until paid in full. SSO also seeks to recover its attorneys' fees and costs under the Prompt Pay Act.

### *Constructive Trust*

45. SSO incorporates paragraphs 1–18 as if fully set forth herein.

46. Under Texas law, a constructive trust will be imposed on property to prevent the unjust enrichment that would result from the commission of a fraud if the benefits of that fraud are transferred to a person following the perpetration of the fraud. Dow's continued use and benefit of the services and materials provided by SSO to Dow at or for the benefit of WDW#391, as well as the services and materials provided to Dow at or for the benefit of WDW#391 by SSO's subcontractors, will result in an unjust enrichment to Dow.

47. SSO requests the Court to impose a constructive trust on Dow, as well as the assets of Dow, at WDW#391, to the extent required to compensate SSO for the conduct of Dow.

### **Jury Demand**

48. SSO requests a jury trial and tenders the appropriate fee with this Petition.

### **Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Sabine Storage & Operations, Inc. respectfully prays that Defendant, The Dow Chemical Company be cited to appear herein, and that SSO be awarded all of its recoverable damages and remedies, as pleaded herein, including but not limited to, its actual, economic, expectation, reliance, liquidated, out-of-pocket, benefit-of-the-bargain, loss of the benefit, lost profit, and statutory damages, restitution, a constructive trust, exemplary damages, plus both pre-judgment and post-judgment interest, attorneys' fees, and costs, and all such other and further relief to which SSO deems itself justly entitled.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

BY: _____
Eric Lipper
State Bar No. 12399000
Melissa Nicholson Sternfels
State Bar No. 24037181
Jessica Levy
State Bar No. 24064412
1415 Louisiana, 36th Floor
Houston, Texas 77002
Telephone: (713) 220-9181
Facsimile: (713) 223-9319
Email: elipper@hirschwest.com
Email: msternfels@hirschwest.com
Email: jlevy@hirschwest.com

**ATTORNEYS FOR PLAINTIFF,
SABINE STORAGE & OPERATIONS, INC.**



JAMIE SMITH
JEFFERSON COUNTY DISTRICT CLERK
1085 PEARL STREET, ROOM 203, BEAUMONT, TX 77701

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
12/29/2017 11:30 AM
JAMIE SMITH
DISTRICT CLERK
B-201118

# REQUEST FOR PROCESS

All sections <u>must</u> be completed for processing this request.

---

**Section 1:**
Cause No. _____   Date  12/29/17
Style:

Plaintiff Sabine Storage & Operations, Inc.

VS

Defendant The Dow Chemical Company

---

**Section 2:**
Check Process Type:

☒ Citation   ☐ Precept to Serve / Notice of Hearing/Notice to Show Cause

☐ Temporary Restraining Order

☐ Application for Protective Order / Temporary (Ex Parte) Protective Order

☐ Notice of Registration of Foreign Judgment   ☐ Citation by Posting

☐ Writ of _____   ☐ Other _____

☐ Citation by Publication*- Newspaper: _____

☐ Check box if you would like the District Clerk's Office to make copies for your service. ($1.00 per page per pleading for copies for service)

---

**Section 3:**
Title of Document/Pleading to be attached for service:  PLAINTIFF'S ORIGINAL PETITION

Note: You must furnish <u>one copy</u> of the document/pleading for <u>each</u> party served.

---

**Section 4:** PARTIES TO BE SERVED (Please type or print):   (or wherever it may be found)

1. Name:  The Dow Chemical Company

   Address:  Registered agent CT Corp System, 1999 Bryan St., Suite 900

   City: Dallas   State: TX   Zip: 75201

2. Name: _____

   Address: _____

   City: _____   State: _____   Zip: _____

3. Name:_____

   Address:_____

   City:_____ State:_____ Zip:_____

4. Name:_____

   Address: _____

   City:_____ State:_____ Zip:_____

5. Name:_____

   Address: _____

   City:_____ State:_____ Zip:_____

Section 5

**Check Service Type:**

| | | | |
|---|---|---|---|
| ☐ | No Service | ☐ | Secretary of State |
| ☐ | Sheriff | ☐ | Commissioner of Insurance |
| ☐ | Constable Pct. | ☐ | Out of County |
| ☐ | Out of State | ☒ | Private Process  ☐ Other |
| ☐ | Certified Mail | | |

Section 6 (ONLY if Section 7 does not apply)

**Attorney Name:** Eric Lipper at HIRSCH & WESTHEIMER, P.C.

**Address:** 1415 Louisiana, 36th Floor
Street/P.O. Box

Houston                    TX                   77002
City                       State                Zip

Attorney's Telephone No. 713-220-9181   Attorney's Bar No. 12399000

Section 7 (ONLY if Section 6 does not apply)

**Pro-Se Name:**_____

Address:_____

_____      _____      _____
City                       State           Zip

Telephone No. _____

Section 8

**Check Delivery Type:**

☐ Hold for pick up     ☒ Mail to Attorney

# CIVIL CASE INFORMATION SHEET

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
12/29/2017 11:30 AM
JAMIE SMITH
DISTRICT CLERK
B-201118

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____   COURT *(FOR CLERK USE ONLY)*: _____

STYLED SABINE STORAGE & OPERATIONS, INC. V. THE DOW CHEMICAL COMPANY
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

**1. Contact information for person completing case information sheet:**

| | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name: Eric Lipper | Email: elipper@hirschwest.com | Plaintiff(s)/Petitioner(s): SABINE STORAGE & OPERATIONS, INC. | ☒ Attorney for Plaintiff/Petitioner<br>☐ *Pro Se* Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: ____ |
| Address: 1415 Louisiana, 36th Floor | Telephone: (713) 220-9181 | | Additional Parties in Child Support Case:<br>Custodial Parent: |
| City/State/Zip: Houston, Texas 77002 | Fax: (713) 223-9319 | Defendant(s)/Respondent(s): THE DOW CHEMICAL COMPANY | Non-Custodial Parent:<br>Presumed Father: |
| Signature: /s/ Eric Lipper | State Bar No: 12399000 | [Attach additional page as necessary to list all parties] | |

**2. Indicate case type, or identify the most important issue in the case *(select only 1)*:**

*Civil* | | | *Family Law* |

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☒ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br>☐ Other Injury or Damage: | ☐ Eminent Domain/Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |

| Employment | Other Civil | | |
|---|---|---|---|
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: |

**3. Indicate procedure or remedy, if applicable *(may select more than 1)*:**

☐ Appeal from Municipal or Justice Court   ☐ Declaratory Judgment   ☐ Prejudgment Remedy
☐ Arbitration-related   ☐ Garnishment   ☐ Protective Order
☐ Attachment   ☐ Interpleader   ☐ Receiver
☐ Bill of Review   ☐ License   ☐ Sequestration
☐ Certiorari   ☐ Mandamus   ☐ Temporary Restraining Order/Injunction
☐ Class Action   ☐ Post-judgment   ☐ Turnover

**4. Indicate damages sought *(do not select if it is a family law case)*:**

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

Rev 2/13

# Case # B-201118 - SABINE STORAGE AND OPERATIONS INC VS THE DOW CHEMICAL COMPANY

| Case Information | |
|---|---|
| Location | Jefferson County - District Clerk |
| Date Filed | 12/29/2017 11:30:59 AM |
| Case Number | B-201118 |
| Case Description | SABINE STORAGE AND OPERATIONS INC VS THE DOW CHEMICAL COMPANY |
| Assigned to Judge | |
| Attorney | Eric Lipper |
| Firm Name | Hirsch & Westheimer, P.C. |
| Filed By | Mary Romo |
| Filer Type | Not Applicable |
| Damages Sought | Over $1,000,000 |
| **Fees** | |
| Convenience Fee | $9.14 |
| Total Court Case Fees | $267.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $49.40 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $325.54 |
| **Payment** | |
| Account Name | Frost-Visa |
| Transaction Amount | $325.54 |
| Transaction Response | Approved |
| Transaction ID | 33317562 |
| Order # | 021524818-0 |

| Petition | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition |
| Filing Description | PLAINTIFF'S ORIGINAL PETITION |
| Reference Number | 20030359-20170878 |
| Comments | |
| Status | Accepted |
| Accepted Date | 12/29/2017 12:27:45 PM |
| **Fees** | |

| | |
|---|---|
| Court Fee | $49.40 |
| Service Fee | $0.00 |
| | |
| Optional Services | |
| >Issue Citation | $8.00 |
| >Postage (11-15 Pages) | $1.40 |
| >Jury Fee | $40.00 |

**Documents**

| | | | |
|---|---|---|---|
| *Lead Document* | PLAINTIFF'S ORIGINAL PETITION.pdf | [Original] | [Transmitted] |
| *Attachments* | Jefferson County - Civil Form Process.pdf | [Original] | [Transmitted] |
| *Attachments* | CIVIL CASE INFORMATION SHEET.pdf | [Original] | [Transmitted] |

**eService Details**

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Jessica Levy<br>jlevy@hirschwest.com | Hirsch & Westheimer, P.C. | EServe | Sent | Yes | Not Opened |
| Eric Lipper<br>elipper@hirschwest.com | Hirsch & Westheimer, P.C. | EServe | Sent | Yes | 12/29/2017 11:34:00 AM |
| Melissa Sternfels<br>msternfels@hirschwest.com | Hirsch & Westheimer, P.C. | EServe | Sent | Yes | Not Opened |